# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

## CIVIL RIGHTS COMPLAINT FORM FOR
## PRO SE PRISONER LITIGANTS IN ACTIONS UNDER
## 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983

NATHANIEL R. BRAZILL ,

Inmate ID Number:_____,

*(Write your full name and inmate ID
number.)*

Case No.: 5:23cv67-TKW-MJF

*(To be filled in by the Clerk's Office)*

**v.**

CHRISTOPHER R. BRANNON,

JONATHAN JONES ,

GLENN E. HANCOCK (See, Attached)

*(Write the full name of each
Defendant who is being sued. If the
names of all the Defendants cannot
fit in the space above, please write
"see attached" in the space and
attach an additional page with the
full list of names. Do not include
addresses here.)*

_____/

**Jury Trial Requested?**
**☑ YES ☐ NO**

FILED USDC FLND PN
MAR 13 '23 PM5:06 MB

Defendants Continued:
SCOTT A. BUSH,
B. WOOD,
JAMES M. CRUTCHFIELD,
MARY PETERSON,
JERRY W. SHULER,
JOSEPH M. FLOYD,
SCOTT G. MAY,
ANGELA GORDON,
RICKY D. DIXON, and
GARY HEWETT,
　　　　Defendants.

2.

## I. PARTIES TO THIS COMPLAINT

### A. Plaintiff

Plaintiff's Name: _Nathaniel R. Brazill_    ID Number: _____

List all other names by which you have been known: _N/A_

_____

Current Institution: _Wakulla Correctional Institution Annex_

Address: _110 Melaleuca Drive, Crawfordville, FL 32327-4963_

### B. Defendant(s)

State the name of the Defendant, whether an individual, government agency, organization, or corporation. For individual Defendants, identify the person's official position or job title, and mailing address. Indicate the capacity in which the Defendant is being sued. Do this for *each and every* Defendant:

1. Defendant's Name: _Christopher R. Brannon_

   Official Position: _Director of Institutional Operations_

   Employed at: _Florida Department of Corrections_

   Mailing Address: _501 South Calhoun Street_

   _Tallahassee, FL 32399-2500_

   ☑ Sued in Individual Capacity        ☐ Sued in Official Capacity

2. Defendant's Name: _Jonathan Jones_

   Official Position: _Assistant Warden of Operations_

   Employed at: _Santa Rosa Correctional Institution_

   Mailing Address: _5850 East Milton Road_

   _Milton, FL 32583-7914_

   ☑ Sued in Individual Capacity        ☐ Sued in Official Capacity

3. Defendant's Name: _Glenn E. Hancock_

   Official Position: _Assistant Warden of Programs_

   Employed at: _Jackson Correctional Institution_

   Mailing Address: _5563 10th Street_

   _Malone, FL 32445-3144_

   ☑ Sued in Individual Capacity        ☐ Sued in Official Capacity

   (*Provide this information for all additional Defendants in this case by attaching additional pages, as needed.*)

## II. BASIS FOR JURISDICTION UNDER 28 U.S.C. § 1331 or § 1346

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

PARTIES TO THIS COMPLAINT (Continued):

4. Defendant's Name: Scott A. Bush
   Official Position: Senior Classification Officer
   Employed at: Jackson Correctional Institution
   Mailing Address: 5563 10th Street
   Malone, FL 32445-3144
   Sued in Individual Capacity Only

5. Defendant's Name: B. Wood
   Official Position: Senior Classification Officer
   Employed at: Jackson Correctional Institution
   Mailing Address: 5563 10th Street
   Malone, FL 32445-3144
   Sued in Individual Capacity Only

6. Defendant's Name: James M. Crutchfield
   Official Position: Correctional Officer Major
   Employed at: Jackson Correctional Institution
   Mailing Address: 5563 10th Street
   Malone, FL 32445-3144
   Sued in Individual Capacity Only

7. Defendant's Name: Mary Peterson
   Official Position: Classification Supervisor
   Employed at: Jackson Correctional Institution
   Mailing Address: 5563 10th Street
   Malone, FL 32445-3144
   Sued in Individual Capacity Only

PARTIES TO THIS COMPLAINT (Continued):

8. Defendant's Name: Jerry W. Shuler
Official Position: Assistant Warden of Operations
Employed at: Jackson Correctional Institution
Mailing Address: 5563 10th Street
                 Malone, FL 32445-3144
Sued in Individual Capacity Only


9. Defendant's Name: Joseph M. Floyd
Official Position: Correctional Officer Colonel
Employed at: Jackson Correctional Institution
Mailing Address: 5563 10th Street
                 Malone, FL 32445-3144
Sued in Individual Capacity Only


10. Defendant's Name: Scott G. May
Official Position: Warden
Employed at: Jackson Correctional Institution
Mailing Address: 5563 10th Street
                 Malone, FL 32445-3144
Sued in Individual Capacity Only


11. Defendant's Name: Angela Gordon
Official Position: Regional Director
Employed at: Quincy Annex
Mailing Address: Administration Building Room 115
                 2225 Pat Thomas Parkway
                 Quincy, FL 32351-8645
Sued in Individual Capacity Only

PARTIES TO THIS COMPLAINT (Continued):

12. Defendant's Name: Ricky D. Dixon
Official Capacity: Secretary, Florida Department of Corrections
Employed at: Department of Corrections
Mailing Address: 501 South Calhoun Street
                 Tallahassee, FL 32399-2500
Sued in Individual and Official Capacities

13. Defendant's Name: Gary Hewett
Official Capacity: Warden
Employed at: Wakulla Correctional Institution
Mailing Address: 110 Melaleuca Drive
                 Crawfordville, FL 32327-4963
Sued in Official Capacity Only

7.

Are you bringing suit against (*check all that apply*):

☐ Federal Officials (*Bivens case*)    ☑ State/Local Officials (*§ 1983 case*)

## III. PRISONER STATUS

Indicate your confined status:

☐ Pretrial Detainee    ☐ Civilly Committed Detainee

☑ Convicted State Prisoner    ☐ Convicted Federal Prisoner

☐ Immigration Detainee    ☐ Other (*explain below*):

_____

_____

## IV. STATEMENT OF FACTS

Provide a short and plain statement of the *facts* showing why you are entitled to relief. Describe how *each* Defendant was involved and what each Defendant did, or did not do, in support of your claim. Identify when and where the events took place, and state how each Defendant caused you harm or violated federal law. Write each statement in short, numbered paragraphs, limited as far as practicable to a single event or incident. ***Do not make legal arguments, quote cases, cite statutes, or reference a memorandum.*** You may make copies of page 6 if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. Exhibits attached to

the complaint will count as part of your page limitation. Therefore, do not attach irrelevant or unnecessary exhibits. Facts not related to this same incident or issue must be addressed in a separate civil rights complaint.

1. Plaintiff Brazill was deprived of his First Amendment right as an inmate to be free from retaliation when prison official Defendants denied, withheld, and banned him from law library work assignments as a law clerk and legal typist at Jackson Correctional Institution because he complained that his transfer from the Graceville Work Camp was retaliation and that the local institutional inmate uniform policies were contrary to and inconsistent with the official policies of the Florida Department of Corrections. 2. This case will illustrate how rehabilitation, career development, and re-entry programming are sacrificed on the altar of revenge, and how retaliation against inmate whistleblowers is a longstanding, widespread,

**Statement of Facts Continued** (*Page 2 of 37* )

and persistent practice within the Florida Department of Corrections. 3. Plaintiff Brazill is an inmate in the custody of the Florida Department of Corrections with a release date of May 18, 2028. 4. Plaintiff Brazill entered the custody of the Florida Department of Corrections on August 2, 2001, at the tender age of 14. 5. Plaintiff Brazill's unusual upbringing has made him an extraordinary prisoner. 6. Plaintiff Brazill attained his GED Diploma on January 27, 2003, at age 16. 7. Plaintiff Brazill then attained his paralegal certificate via correspondence study from the University of Florida on December 15, 2004, at age 18. 8. Plaintiff Brazill later became a Florida Department of Corrections (hereinafter "FDOC")

NDFL Pro Se 14 (Revised June 2022) Civil Rights Complaint Prisoner
ClerkAdmin/Official/Forms

Statement of Facts Continued (Page 3 of 37)
certified law clerk on December 31, 2007, at age 21.
9. During his incarceration, Plaintiff Brazill has
been assigned to law clerk positions at
Hillsborough Correctional Institution, Desoto Correctional
Institution Annex, Hardee Correctional Institution,
Charlotte Correctional Institution, and Wakulla
Correctional Institution Annex. 10. After his
release from prison, Plaintiff Brazill will pursue
a career in law as a paralegal until he
completes law school, obtains the restoration
of his civil rights, and is admitted to and
licensed by The Florida Bar to be a lawyer.
11. Plaintiff Brazill's boldness and tenacity has
earned him the moniker "Jailhouse Attorney General"
as he has a dogged determination to prosecute
civil actions against prison officials who encroach
upon his constitutional rights. 12. In January 2020,
Plaintiff Brazill was an inmate incarcerated at
the Graceville Work Camp (hereinafter "Graceville")
because of his minimum security custody level.
13. Graceville is a satellite facility under the
management and control of prison administrators
at the Jackson Correctional Institution. 14. By
longstanding custom and practice, the Secretary of
FDOC has delegated policymaking authority to the
wardens, assistant wardens, and chiefs of security
of each prison facility, which is fundamentally
flawed, plagued by grossly insufficient oversight,
and unlawful in that it violates sections
944.09(2) and 944.14 of the Florida Statutes.

11.

Statement of Facts Continued (Page 4 of 37)

15. Defendant Secretary Ricky D. Dixon adopted and maintained the custom and practice of delegating policymaking authority to wardens, assistant wardens, and chiefs of security at each prison facility.

16. Utilizing his policymaking authority, Defendant former Major Jonathan Jones, as chief of security, issued a "Class A to Canteen" directive mandating inmates wear class A uniforms to canteen from the recreation yard. 17. Plaintiff Brazill complained that the "Class A to Canteen" and "Class A for Count" customs and practices were inconsistent with established FDOC policy. 18. At Graceville, Defendant Senior Classification Officer Scott A. Bush collected Plaintiff Brazill's grievances complaining to Defendant Jones and Defendant Assistant Warden Glenn E. Hancock that the Graceville inmate uniform customs and practices were contrary to the official policies of FDOC. 19. The Graceville inmate uniform policies had been developed by Defendant Jones, as Graceville chief of security, and approved by Defendant former Warden Christopher R. Brannon as warden of Jackson Correctional and Graceville. 20. On January 24, 2020, Defendants Hancock, Bush, and Jones, colluded to approve the transfer of Plaintiff Brazill from Graceville to Jackson Correctional. 21. On January 24, Plaintiff Brazill was transferred from Graceville to Jackson Correctional. 22. Following Plaintiff Brazill's transfer from Graceville, he complained

12.

Statement of Facts Continued (Page 5 of 37)
that the transfer was retaliation. 23. Graceville
does not have a law library. 24. Jackson
Correctional, however, has a law library and
utilizes inmates as law clerks and legal typist
to provide legal assistance and word processing
services to the inmate population. 25. On
February 13, 2020, Plaintiff Brazill wrote a formal
grievance to Defendants Brannon and Hancock
complaining that his transfer from Graceville was
retaliation. 26. On February 24, 2020, Plaintiff Brazill
wrote a formal grievance to Defendant Hancock
complaining that Jackson Correctional's "Class A
for Count" policy was contrary to the official
policy of FDOC. 27. On March 2, 2020, Defendants
Brannon and Hancock rejected Plaintiff Brazill's
retaliation claim in the February 13 grievance and
advised Plaintiff Brazill that "you were identified
as a certified law clerk and brought back to
the Main Unit for utilization as necessary." 28. In
a letter dated March 2, 2020, Plaintiff Brazill
wrote to FDOC Administrator James Perdue
complaining that the January 24 transfer was
retaliation. 29. At approximately 8:40 a.m. on March 9,
2020, Defendant Bush hand-delivered to Plaintiff
Brazill a March 6 memo from the "Warden's
Office" in response to his March 2 letter to
Mr. Perdue about the transfer from Graceville.
30. The March 6 memo rejected Plaintiff Brazill's
retaliation claim and was signed by Defendant
Bush "for Warden Brannon." 31. On March 10, 2020,

13.

Statement of Facts Continued (Page 6 of 37)
Defendant Hancock rejected Plaintiff Brazill's
February 24 grievance and advised Plaintiff Brazill
that each facility had authority to develop its
own rules. 32. On March 14, 2020, Plaintiff Brazill
wrote to Defendant Regional Director Angela Gordon
to report that his January 24 transfer from
Graceville was an act of unlawful retaliation and
to request a formal investigation. 33. On March 18,
2020, Plaintiff Brazill wrote a formal grievance
to Defendant Hancock complaining that the
institutional "Class A to Canteen" custom and practice
at Jackson Correctional of requiring inmates to
wear class A uniforms to canteen from the
recreation yard was contrary to and inconsistent
with the officially established policy of FDOC
outlined in Chapter 33-602.101(2)(b)3.d. of the
Florida Administrative Code. 34. At Jackson
Correctional, Defendant Senior Classification Officer
B. Wood collected Plaintiff Brazill's grievances.
35. On March 27, 2020, Defendant Hancock rejected
Plaintiff Brazill's March 18 grievance and
advised Plaintiff Brazill that Ch. 33-602.101(2)(b)3.d.
did not apply to Jackson Correctional and that
prison administrators at each facility had
authority to create their own policies.
36. Defendants Brannon, Jones, Hancock, Bush, and
Wood then colluded to ban Plaintiff Brazill
from any assignment in the law library at
Jackson Correctional. 37. On April 14, 2020,
Plaintiff Brazill wrote a follow-up letter to

14.

Statement of Facts Continued (Page 7 of 37)

Defendant Gordon to again make her aware of his unlawful transfer from Graceville to Jackson Correctional and to seek an investigation. 38. On April 29, 2020, Defendant Gordon visited Jackson Correctional where she met with Defendants Brannon, Jones, and Hancock, but took no corrective, remedial, or disciplinary action with respect to the unlawful retaliatory transfer of Plaintiff Brazill from Graceville to Jackson Correctional. 39. On May 12, 2020, Plaintiff Brazill was summoned to a meeting with Defendants Jones, Hancock, and Wood, for a work assignment interview. 40. During the May 12 meeting, Plaintiff Brazill requested an assignment in the law library as a law clerk. 41. In furtherance of the ban against Plaintiff Brazill, Defendants Jones, Hancock, and Wood denied Plaintiff Brazill's request for the law clerk assignment in the law library. 42. Instead, Defendants Jones, Hancock, and Wood, gave Plaintiff Brazill a punitive assignment in food service where his duties were to wash dishes in the kitchen. 43. There was no legitimate, good faith basis to deny Plaintiff Brazill a law clerk assignment by Defendants Jones, Hancock, and Wood. 44. Defendants Jones, Hancock, and Wood, reached an agreement to deny Plaintiff Brazill a law clerk assignment because he filed grievances complaining about prison conditions. 45. On June 1, 2020, Plaintiff Brazill wrote to Defendant Brannon about the May 12 decision of

15.

Statement of Facts Continued (Page 8 of 37)
Defendants Jones, Hancock, and Wood, denying him a law clerk assignment. 46. On June 9, 2020, Defendant Brannon responded, agreeing with Defendants Jones, Hancock, and Wood, that Plaintiff Brazill had disqualified himself from a law clerk work assignment by complaining about his retaliatory transfer from Graceville and the institutional inmate uniform policy. 47. In his June 9 response, Defendant Brannon also told Plaintiff Brazill that his "attitude is lacking." 48. As warden, Defendant Brannon had the authority to assign Plaintiff Brazill to a law clerk position in the law library. 49. On September 8, 2020, at approximately 9:10 a.m., Plaintiff Brazill met with Defendant Brannon, and Defendant Major James M. Crutchfield as successor to Defendant Jones (who had been promoted), to request a law clerk assignment in the law library. 50. At the September 8 meeting, Plaintiff Brazill discussed with Defendants Brannon and Crutchfield the May 12 decision denying Plaintiff Brazill the law clerk assignment. 51. During the September 8 meeting, Plaintiff Brazill detailed for Defendants Brannon and Crutchfield his qualifications and prior work history as a law clerk at other institutions, and he reminded Defendant Brannon of his own prior March 2 statement that Plaintiff Brazill had been transferred from Graceville to Jackson Correctional to be a law clerk. 52. Plaintiff Brazill also highlighted for Defendants Brannon and Crutchfield that the

16.

Statement of Facts Continued (Page 9 of 37)
only reason Defendants Jones, Hancock, and Wood, had for denying Plaintiff Brazill the assignment as a law clerk was Plaintiff Brazill's complaints about the institutional inmate uniform policy and his retaliatory transfer from Graceville.
53. Defendant Crutchfield interrogated Plaintiff Brazill about his grievance filings and stated that Plaintiff Brazill would not be complaining if he were given "some extra chicken" in food service. 54. According to Defendant Brannon, "any" reason Defendants Jones, Hancock, and Wood, had for denying and withholding the law clerk assignment from Plaintiff Brazill was a "good enough" reason for their decision.
55. In obedience to the ban against Plaintiff Brazill, Defendants Brannon and Crutchfield denied Plaintiff Brazill a law clerk assignment to punish him for complaining about prison conditions. 56. Defendant Warden Scott G. May succeeded Defendant Brannon as warden of Jackson Correctional circa October 2020.
57. On November 2, 2020, during a visit to Plaintiff Brazill's housing unit by Defendant May and Defendant Colonel Jerry W. Shuler, Plaintiff Brazill asked Defendant May if he would "create a policy at Jackson Correctional prohibiting retaliatory transfers." 58. Defendant May became indignant, and asked, "You have any other dumb questions you wanna ask me?"
59. Recognizing the hostility underlying his

Statement of Facts Continued (Page 10 of 37)
question, Plaintiff Brazill answered, "No, sir." 60. Defendant
May then asked, "You have any smart questions
you wanna ask me?" 61. Plaintiff Brazill
answered, "No, sir." 62. Defendant Shuler approached
and asked Defendant May, "What did he ask?"
63. Defendant May briefed Defendant Shuler about
Plaintiff Brazill's question, and then Defendant
Shuler asked Plaintiff Brazill, "Who do you
feel is retaliating against you?" 64. Plaintiff
Brazill then reported to Defendant Shuler and
Defendant May that he had been transferred
from Graceville Work Camp by Defendant Jones in
retaliation for filing grievances complaining about
the local class A uniform policy. 65. A few
weeks later, Defendant May developed and
implemented a "Class A All Day" inmate uniform
policy for Jackson Correctional, requiring all
inmates to wear class A uniforms from 4:00 AM
to 4:00 PM, 7-days a week, contrary to F.A.C.
Chapter 33-602.101(2)(b). 66. In November 2020, the
sister of inmate Willie G. Westberry emailed
Defendant May complaining that Defendant Wood
and Lieutenant Benton had retaliated against
Westberry for his complaints about prison conditions
at Jackson Correctional. 67. On November 23, 2020,
at approximately 8:40 a.m., Defendants May and
Shuler met with inmate Westberry and intimidated
Westberry to cease his complaining to his
sister about prison conditions. 68. Circa
December 2020, Defendant Hancock approved the

18.

Statement of Facts Continued (Page 11 of 37)
assignment of inmate Robert T. Overcash to work
in the law library as a law clerk trainee.
69. Although inmate Overcash had been
subjected to disciplinary action at Jackson
Correctional and lacked any legal education,
legal training, or an FDOC law clerk certification,
inmate Overcash had not filed any grievances
complaining about the institutional inmate uniform
policy. 70. In February 2021, Plaintiff Brazill
learned of a vacancy in the law library at
Jackson Correctional for the legal typist position.
71. On February 19, Plaintiff Brazill wrote to
the law library supervisor expressing his desire
to be the legal typist and providing his
qualifications. 72. In April 2021, the warden or
his designee appointed Correctional Officer T.
Waterworth to be the law library supervisor.
73. On April 15, 2021, a written order was
posted directing Plaintiff Brazill to report to
the law library supervisor. 74. Plaintiff Brazill
reported to the law library on April 15 as
ordered and was given a job interview by
Officer Waterworth. 75. Officer Waterworth expressed
her satisfaction in Plaintiff Brazill's answers to
her questions and then she tested Plaintiff
Brazill's typing speed where he demonstrated
his ability to type fifty-eight (58) words per
minute. 76. Officer Waterworth then stated to
Plaintiff Brazill, "We're going to give you the
job. Get with [inmate] Coleman and he'll show

19.

Statement of Facts Continued (Page 12 of 37)
you what needs to be done." 77. On April 16, 2021, Plaintiff Brazill's name appeared on the library clerk roster and a written order was posted for Plaintiff Brazill to report to the law library with the other clerks at 7:45 a.m. 78. Plaintiff Brazill reported to the law library on April 16 as ordered and performed the duties of the legal typist throughout the work day under the supervision of Officer Waterworth. 79. At approximately 6:30 p.m. on April 16, the Food Service Security Officer visited Plaintiff Brazill in his housing unit and informed him that Food Service Director Scot L. Black had spoken to Defendant Hancock regarding Plaintiff Brazill being assigned to work in the law library and that Defendant Hancock had declared that Plaintiff Brazill would never be assigned to work in the law library. 80. Plaintiff Brazill's name was removed from the library clerk roster. 81. On April 18, 2021, Plaintiff Brazill wrote to Defendant Bush regarding the legal typist assignment. 82. On April 20, 2021, Plaintiff Brazill spoke to Food Service Director Black and was informed by Mr. Black that he had spoken to Defendant Hancock on April 16 about Plaintiff Brazill being assigned to work in the law library, that he advised Defendant Hancock that Plaintiff Brazill was an excellent worker,

20.

Statement of Facts Continued (Page 13 of 37) that he was not opposed to Plaintiff Brazill leaving food service to work in the law library, but that Defendant Hancock himself was adamantly opposed to assigning Plaintiff Brazill to work in the law library. 83. In response to Plaintiff Brazill's April 18 inquiry, on April 21, 2020, Defendant Bush wrote that Plaintiff Brazill would be "considered" for the legal typist assignment. 84. Every month, Food Service Director Black completed a written gain time work assignment performance evaluation in which he could rate Plaintiff Brazill either (1) Unsatisfactory, (2) Satisfactory, or (3) Above Satisfactory. 85. Each month during Plaintiff Brazill's 12-month assignment to food service, Mr. Black rated Plaintiff Brazill "Above Satisfactory" on his monthly evaluation for his work assignment performance. 86. On May 12, 2021, Plaintiff Brazill was summoned to a meeting with Defendants Hancock, Crutchfield, and Defendant Classification Supervisor Mary Peterson, for a work assignment interview. 87. During the May 12 meeting, Plaintiff Brazill requested an assignment in the law library as a law clerk or legal typist. 88. As authorized by longstanding FDOC custom and practice, Defendants Hancock, Crutchfield, and Peterson, denied Plaintiff Brazill a law clerk or legal typist assignment in furtherance of the ban against Plaintiff Brazill as punishment for his complaints about prison

21.

Statement of Facts Continued (Page 14 of 37) conditions. 89. Instead, Defendants Hancock, Crutchfield, and Peterson, gave Plaintiff Brazill an "unskilled" work assignment as "dorm laundryman." 90. Plaintiff Brazill then attempted to remind Defendant Hancock of his March 2, 2020, statement and to ask Defendant Hancock assignment to the legal typist position in the law library but Defendant Hancock shut down any discussion of the matter and Defendant Crutchfield ordered Plaintiff Brazill to report to his dorm; Plaintiff Brazill complied with his order. 91. In compliance with the ban against Plaintiff Brazill, Defendants Hancock, Crutchfield, and Peterson had a meeting of the minds to deny Plaintiff Brazill an assignment as a law clerk or legal typist as punishment because he filed grievances complaining about prison conditions. 92. Defendants Hancock, Crutchfield, and Peterson, lacked a legitimate, non-retaliatory reason to deny Plaintiff Brazill a law clerk or legal typist assignment. 93. In May 2021, the warden or his designee appointed Education Supervisor Shelley Spence as the law library supervisor. 94. On May 24, 2021, Plaintiff Brazill wrote to Education Supervisor Spence requesting the legal typist position in the law library. 95. On June 1, 2021, Education Supervisor Spence responded to Plaintiff Brazill that she submitted his name for

22.

Statement of Facts Continued (Page 15 of 37)
assignment to the legal typist position.
96. Despite Ms. Spence's efforts, Defendants refused
to meet with Plaintiff Brazill or assign him to
the legal typist position. 97. Circa June 2021,
Defendants Hancock, Bush, and May, approved the
removal of inmate Robert T. Overcash from his
assignment as a law clerk trainee after inmate
Overcash failed the law clerk exam. 98. In
September 2021, Defendants Hancock, Bush, and
May, approved the assignment of inmate Timothy
S. Turner to work in the law library in the
legal typist position. 99. Although inmate Turner
had no experience, no training, and no prior
law library work history, inmate Turner had
filed no grievances complaining about
retaliatory transfers or the institutional class
A uniform policy. 100. Inmate Turner was
subsequently placed in disciplinary confinement
when Defendant May found drugs on his
person during a pat search in front of
B-dorm. 101. As warden, Defendant May had
the authority to assign Plaintiff Brazill to an
assignment as a law clerk or legal typist.
102. On September 14, 2021, Plaintiff Brazill met
with Defendant May and requested a law clerk
or legal typist assignment in the law library.
103. During the September 14 meeting, Plaintiff
Brazill informed Defendant May that "Assistant
Warden Hancock is using his position on the
I.C.T. to ban me from working in the law

23.

Statement of Facts Continued (Page 16 of 37) library as a law clerk or legal typist because of my grievance writing." 104. Plaintiff Brazill explained to Defendant May that Defendant Hancock was "simply retaliating against me because I file grievances." 105. In obedience to the ban against Plaintiff Brazill and the longstanding custom and practice within the FDOC, at the September 14 meeting, Defendant May denied Plaintiff Brazill an assignment in the law library as a law clerk or legal typist as punishment for his complaints about prison conditions. 106. There was no legitimate, non-retaliatory reason for Defendant May to deny Plaintiff Brazill a law library assignment as a law clerk or legal typist. 107. On September 17, 2021, Plaintiff Brazill had a telephone conference with Florida State Senator Bobby Powell about the Defendants' repeated decisions denying him an assignment in the law library as a law clerk or legal typist. 108. In October 2021, Defendants Bush, Hancock, and Defendant Colonel Joseph M. Floyd, approved the assignment of inmate Ronny Batista to work in the law library as a law clerk trainee. 109. Even though inmate Batista was not an FDOC certified law clerk, had no legal education, and no prior law library work experience, he also filed no grievances complaining about retaliatory transfers or the institutional class A uniform policy.

24.

Statement of Facts Continued (Page 17 of 37)
110. On October 18, 2021, Plaintiff Brazill wrote a 4-page letter to Defendant Gordon as Regional Director to report additional acts of unlawful retaliation by prison official Defendants at Jackson Correctional. 111. In his October 18 letter, Plaintiff Brazill explained to Defendant Gordon that Defendant "Hancock has blocked all efforts of staff here [at Jackson Correctional] to have me assigned to work in the law library as a law clerk or legal typist." 112. Plaintiff Brazill made Defendant Gordon aware that there was no legitimate, non-retaliatory reason for her subordinate prison officials to deny him an assignment in the law library. 113. On October 28, 2021, Plaintiff Brazill was summoned to the office of Defendant Floyd, the then chief of security at Jackson Correctional. 114. At the October 28 meeting, Plaintiff Brazill was surrounded in a hostile manner by Defendant Floyd, Captain Gary F. Brown, Jr., Sergeant James A. Conrad, and Lieutenant Benton, and subjected to threats and intimidation. 115. During the October 28 meeting, Defendant Floyd, among other things, ordered Plaintiff Brazill to stop filing complaints, told Plaintiff Brazill that he would never be a law clerk, and he threatened Plaintiff Brazill's life and safety if he continued filing grievances. 116. To replace inmate Turner, in November 2021, Defendants Hancock, Bush, and Floyd, approved

25.

Statement of Facts Continued (Page 18 of 37)
another inmate to work in the law library in the position of legal typist. 117. Like inmate Turner, this new inmate had no experience, no training, and no previous law library work history, but he also had filed no grievances complaining about retaliatory transfers or the institutional class A uniform policy. 118. On November 12, 2021, Plaintiff Brazill was summoned to the office of Defendant Shuler, promoted to assistant warden, in response to an email from Plaintiff Brazill's father reporting the threats made by Defendant Floyd on October 28. 119. At the November 12 meeting, Plaintiff Brazill informed Defendant Shuler that Defendant Floyd had warned him to stop filing grievances, had declared that he would never be a law clerk again, and had threatened his life and safety if he continued filing grievances. 120. Immediately after the November 12 meeting, Defendant Shuler had Plaintiff Brazill placed in disciplinary confinement. 121. Defendant Gordon received a Management Information Notification System (MINS) alert regarding the October 28 retaliatory threats by Defendant Floyd to Plaintiff Brazill for his grievances on November 12, 2021.
122. Following his release from disciplinary confinement, on December 14, 2021, Plaintiff Brazill was summoned to a meeting with Defendants Bush, Shuler, Floyd, and non-defendant Captain Kristopher L. Williams for a work assignment

26.

Statement of Facts Continued (Page 19 of 37 interview. 123. During the December 14 meeting, Plaintiff Brazill attempted to discuss an assignment in the law library as a law clerk or legal typist. 124. However, Defendants Bush, Shuler, and Floyd, and Captain Williams held a one-way conversation with Plaintiff Brazill and refused to allow any discussion of or from Plaintiff Brazill about any assignment in the law library. 125. In furtherance of the ban against Plaintiff Brazill, Defendants Bush, Shuler, and Floyd, had a meeting of the minds to deny Plaintiff Brazill a law clerk or legal typist assignment as punishment for complaining about prison conditions at Jackson Correctional. 126. There was no legitimate, non-retaliatory reason for Defendants Bush, Shuler, and Floyd to deny Plaintiff Brazill a law clerk or legal typist assignment. 127. On December 20, 2021, Defendant Gordon visited Jackson Correctional. 128. During the December 20 visit, Defendant Gordon met with Defendants Hancock, May, Crutchfield, Peterson, Shuler, Floyd, and Bush, and was briefed on the circumstances underlying the prohibition against Plaintiff Brazill being assigned a law library position at Jackson Correctional. 129. At the December 20 meeting, Defendant Gordon ordered that Plaintiff Brazill be transferred from Jackson Correctional to Wakulla Correctional to be a law clerk in the law library at that

27.

Statement of Facts Continued (Page 20 of 37)
facility. 130. On December 27, 2021, Plaintiff Brazill
was transferred from Jackson Correctional to
Wakulla Correctional. 131. Upon Plaintiff Brazill's
arrival, he was informed by Correctional Officer
Marcus Lofton Melton that he had been
given an "Institutional Needs" transfer to work
in the law library as a law clerk but warned
"don't make no trouble." 132. On January 19, 2022,
Plaintiff Brazill was summoned to a meeting
with Assistant Warden Tommy D. Dicks,
Classification Supervisor Adam T. Pridgeon, and
Major Troy Hawkins, where they assigned him
to a law clerk position in the law library at
Wakulla Correctional. 133. Assistant Warden Dicks,
Classification Supervisor Pridgeon, and Major
Hawkins, are also subordinates of Defendants
Gordon and Dixon. 134. On August 31, 2022,
Classification Supervisor Pridgeon lead Defendant
May and Assistant Regional Director James Coker
on a visit to the law library at Wakulla
Correctional where Plaintiff Brazill was at his
law clerk work assignment which Plaintiff
Brazill understood as a reminder that his
continued assignment as a law clerk in the
law library at Wakulla Correctional was
contingent on his continued restraint from
filing any grievances. 135. During the August 31
visit, Plaintiff Brazill asked Defendant May if
he could return to Jackson Correctional to be
a law clerk in the law library. 136. Defendant

28.

Statement of Facts Continued (Page 21 of 37)
May responded, "You're fine where you're at."
137. Defendant May refused to lift the ban
prohibiting the assignment of Plaintiff Brazill as
a law clerk in the law library at Jackson
Correctional. 138. As of this filing, Plaintiff Brazill
is still currently assigned as a law clerk in
the law library at Wakulla Correctional.
139. Since his arrival at Wakulla Correctional,
Plaintiff Brazill has not filed any grievances.
140. Defendants Brannon, Jones, Hancock, Wood,
Crutchfield, May, Peterson, Bush, Shuler, and
Floyd were not disciplined or retrained
regarding withholding work assignments from
Plaintiff Brazill in retaliation for complaining
about prison conditions. 141. Plaintiff Brazill
repeatedly exhausted the administrative review
process regarding each decision to routinely
deny him assignments in the law library
but to no avail. 142. Plaintiff Brazill has
been deterred from filing grievances at
Wakulla Correctional regarding efforts by
prison officials to foment inmate-on-inmate
violence out of fear that any grievance will
result in his removal from his current
assignment as a law clerk in the law library.
143. Plaintiff Brazill was and remains eligible
and qualified for assignment as a law clerk
or legal typist in the law library at Jackson
Correctional. 144. The totality of the
circumstances indicate that Plaintiff Brazill

29.

Statement of Facts Continued (Page 22 of 37)
was denied and banned from an assignment in
the law library as a law clerk or legal typist
at Jackson Correctional which a reasonably
objective person would conclude was motivated
by unlawful retaliatory animus. 145. While at
Jackson Correctional, Plaintiff Brazill was not
charged with or accused of any disciplinary
infraction, nor alleged to have engaged in any
conduct or behavior, which warranted exclusion
from a law clerk or legal typist assignment.
146. There is a legitimate penological interest in
the continued placement of Plaintiff Brazill in a
work assignment in the law library as a law clerk
as Plaintiff Brazill's post-release plans for
successful re-entry to free society includes
maintaining and enhancing the legal knowledge,
skills, and abilities acquired through continuous
work in prison law libraries. 147. As warden,
first Defendant Brannon then Defendant May
approved and ratified the unlawful decisions to
deny and withhold from Plaintiff Brazill any
assignment in the law library as punishment because
he complained that his transfer from Graceville
was retaliation and that the institutional inmate
uniform policy was contrary to official FDOC
policy. 148. As warden, Defendant Brannon and
Defendant May adopted and maintained the
custom and practice of rubber stamping the
decisions of Defendants Hancock, Jones, and
Bush. 149. Defendants Hancock and Bush had

30.

Statement of Facts Continued (Page 23 of 37)
been responsible for inmate work assignments at
Jackson Correctional prior to either Defendant
Brannon or Defendant May becoming warden and
in such position they developed a sense of
authoritative entitlement. 150. There was
collusion between the Defendants to deny
Plaintiff Brazill any assignment in the law
library at Jackson Correctional as punishment
because he complained about the decisions of
prison officials. 151. As warden, both Defendants
Brannon and May held supervisory positions
over Defendant Hancock and the other
Defendants but they rubber stamped and
ratified the decisions and improper motives
of their subordinate prison officials.
152. Despite Defendant Brannon's failure of
leadership and abuse of authority, Defendant
Dixon promoted him to Director of
Institutional Operations and Intelligence.
153. As Regional Director and Secretary
respectively, Defendants Gordon and Dixon held
supervisory positions over Defendants Hancock,
Brannon, May, Jones, Wood, Crutchfield, Peterson,
Bush, Shuler, and Floyd. 154. However, Defendants
Gordon and Dixon adopted and maintained the
longstanding custom and practice of allowing
and permitting subordinate prison official
Defendants to ignore and disregard
established FDOC policy, and to take actions,
make decisions, and implement local institutional

31.

Statement of Facts Continued (Page 24 of 37) policies that were contrary to and inconsistent with official FDOC policies such that they set all FDOC policy for Jackson Correctional.

155. On January 14, 2021, Defendants Gordon and Dixon visited Jackson Correctional but they refused to meet with Plaintiff Brazill.

156. Defendants Gordon and Dixon routinely tacitly ratified or by inaction allowed all FDOC policy at Jackson Correctional to be made by subordinate Defendant prison officials.

157. Plaintiff Brazill's grievances challenging the local policies and practices that contravened official FDOC policies motivated unconstitutional retaliation by subordinates. 158. But Defendants Gordon and Dixon were also deliberately indifferent to the violation of the constitutional rights of Plaintiff Brazill and other inmates.

159. Following Plaintiff Brazill's March 14, 2020, and April 14, 2020, letters to Defendant Gordon regarding his January 24, 2020 unconstitutional retaliatory transfer by Defendants Jones, Hancock, and Bush, Defendant Gordon did not discipline that known incident of unlawful retaliation and failed to take corrective or remedial action despite being aware of unlawful retaliation by those subordinate prison administrators. 160. On October 18, 2021, Plaintiff Brazill sent to Defendant Gordon by certified mail, return receipt requested, a letter in which he

32.

Statement of Facts Continued (Page 25 of 37) detailed the unconstitutional denial and ban on Plaintiff Brazill working in the law library as a law clerk at Jackson Correctional, but Defendant Gordon did not discipline the officials involved in these incidents either. 161. Jackson Correctional has no policy prohibiting unlawful retaliation, defining unlawful retaliation, and there is no standard by which to evaluate claims of unlawfully motivated retaliation. 162. The actions and decisions of the Defendants were not subject to meaningful administrative review and not constrained by the official policies of the FDOC. 163. Furthermore, the administrative review process at Jackson Correctional was plagued with deficiencies and unworkable such that when Plaintiff Brazill sought administrative review of Defendant Hancock's decisions denying him a work assignment in the law library, Defendant Hancock personally administratively reviewed his own decisions and determined his decisions were proper. 164. The repeated denials and de facto ban on the assignment of Plaintiff Brazill as a law clerk or legal typist at Jackson Correctional was so completely without merit as to allow the reasonable deduction that the Defendants' decisions were unlawfully motivated by a retaliatory purpose. 165. The chronology of events indicate that but for Plaintiff Brazill's complaints about his retaliatory transfer from

33.

Statement of Facts Continued (Page 26 of 38)
Graceville and the institutional inmate uniform
policy, Plaintiff Brazill would not have been
denied and banned from a work assignment as
a law clerk or legal typist at Jackson
Correctional. 166. As Secretary, Defendant Dixon
has delegated too much unbridled authority to
subordinates, given too much power to low-level
officials, and granted too much liberty to
inexperienced junior staffers such that official
FDOC policies are a sham. 167. Inadequately
trained employees of FDOC have engaged in a
widespread, persistent, and longstanding custom
and practice of denying and withholding law
clerk assignments from Plaintiff Brazill as
punishment for complaining about prison
conditions. 168. In 2011, Plaintiff Brazill was
assigned as a law clerk in the law library
at Hardee Correctional. 169. Glenn R. Morris
became Assistant Warden of Programs at
Hardee Correctional circa October 2011.
170. Assistant Warden Morris was a named
defendant in Nathaniel R. Brazill v. Beth
Cowart, et al., U.S. Middle District Case No.
2:10-cv-458-FtM-29DNF, based on his approval
of the 2009 retaliatory transfer and the
2010 retaliatory ban of Plaintiff Brazill
from Desoto Correctional. 171. On January 26,
2012, Plaintiff Brazill was summoned to a
meeting with Assistant Warden Morris.
172. During the January 26 meeting, Assistant

34.

Statement of Facts Continued (Page 27 of 37)
Warden Morris roared at Plaintiff Brazill, "You got my name in a lawsuit! Is there gonna be a problem between us?"

173. Acting according to the longstanding FDOC custom and practice, Assistant Warden Morris removed Plaintiff Brazill from his law clerk assignment in the law library at Hardee Correctional on January 26, 2012, to punish him for his civil litigation.

174. Assistant Warden Morris did not have any legitimate, non-retaliatory reason on January 26, 2012, to remove Plaintiff Brazill from his law clerk assignment in the law library at Hardee Correctional. 175. In 2014, while incarcerated at Hardee Correctional, Colonel John Miners implemented a local policy that limited the law library access of Plaintiff Brazill to the point of being non-existent. 176. Plaintiff Brazill filed a formal grievance challenging the elimination of his law library access which was denied by Assistant Warden Larry P. Olson. 177. In December 2014, Plaintiff Brazill filed a grievance appeal to the Office of the Secretary of FDOC complaining about the denial of access to the law library. 178. Also in December 2014, Plaintiff Brazill submitted a request to Classification Officer Belinda S. Deen seeking a law clerk assignment. 179. On December 30, 2014, Plaintiff Brazill's grievance appeal to the

Statement of Facts Continued (Page 28 of 37)
Office of the Secretary of FDOC was approved
with instructions issued to Assistant Warden
Olson to modify the policy to ensure Plaintiff
Brazill had access to the law library.
180. On January 8, 2015, Plaintiff Brazill was
summoned to a meeting with Assistant
Warden Olson where his request for a
law clerk assignment was denied and he
was given a punitive work assignment in
food service. 181. On or about February 5,
2015, Ms. Ruby Selph, the Librarian at
Hardee Correctional, emailed Classification
Officer Deen and Assistant Warden Olson
to request that Plaintiff Brazill be
assigned to a law clerk position in the
law library. 182. In accordance with the
longstanding FDOC custom and practice,
Assistant Warden Olson and Classification
Officer Deen denied Ms. Selph's request for
Plaintiff Brazill to be a law clerk in the
law library at Hardee Correctional in
February 2015 to punish him for complaining
about prison conditions. 183. There was no
legitimate, non-retaliatory basis for Assistant
Warden Olson and Classification Officer
Deen to deny Plaintiff Brazill a law clerk
assignment in the law library at Hardee
Correctional in February 2015. 184. On May 12,
2015, Plaintiff Brazill was transferred to
Charlotte Correctional. 185. On May 21, 2015,

36.

Statement of Facts Continued (Page 29 of 37)
Plaintiff Brazill was assigned to a law
clerk position in the law library at Charlotte
Correctional by Chief of Security Colonel
Patrick L. Riggins. 186. In 2015, Defendant
Dixon was the Deputy Secretary of the
FDOC. 187. Defendant Dixon remained Deputy
Secretary from 2015 until November 2021
when he was promoted to Secretary of the
FDOC. 188. As Deputy Secretary, Defendant
Dixon held a supervisory position over
subordinate prison officials and possessed
authority to train, direct, control, and
discipline those subordinates. 189. On
Thursday, June 25, 2015, Defendant Dixon
met with Plaintiff Brazill during Defendant
Dixon's visit to the law library at
Charlotte Correctional. 190. During the
June 25 meeting, Plaintiff Brazill reported
to Defendant Dixon that subordinate prison
officials were withholding preferred work
assignments from inmates in retaliation
against those inmates who complain
about prison conditions. 191. Plaintiff
Brazill told Defendant Dixon, among other
things, about how requests made by
himself and Librarian Selph for a work
assignment as a law clerk in the law
library at Hardee Correctional had been
denied by Assistant Warden Olson in
retaliation for complaining about prison

Statement of Facts Continued (Page 30 of 37)
conditions there. 192. Plaintiff Brazill also
reported to Defendant Dixon that he worked
in the law library at Hardee Correctional but
was removed in 2012 from that work
assignment by Assistant Warden Morris
because of his civil litigation against
Assistant Warden Morris. 193. FDOC, under
Defendant Dixon as Secretary, still does not
list retaliation against inmates as prohibited
in its rules of conduct for its employees
nor does it list retaliation in its range
of disciplinary action for its employees.
194. Since his participation in the January
2020 and May 2020 retaliation incidents,
Defendant Jones has received two
promotions, first from major to colonel,
then from colonel to assistant warden,
and upon information and belief, Defendant
Jones is on the fast track for promotion
to warden when he should instead be
terminated. 195. Despite being aware that
Plaintiff Brazill had been subjected to
repeated incidents of unlawful retaliation,
as Deputy Secretary, Defendant Dixon failed
to train subordinate prison officials that
it is unlawful for them to deny or
withhold law clerk work assignments from
Plaintiff Brazill solely to punish him for
complaining about prison conditions and
Defendant Dixon has failed to stop them.

38.

Statement of Facts Continued (Page 31 of 37)

196. In 2017, Plaintiff Brazill was still assigned as a law clerk in the law library at Charlotte Correctional. 197. On May 15, 2017, Plaintiff Brazill wrote a letter to Florida State Senator Bobby Powell complaining about an FDOC ban on the book, "Devil in the Grove" written by Pulitzer-prize winning author Gilbert King. 198. Senator Powell forwarded a copy of Plaintiff Brazill's May 15 letter to the Office of the Secretary of the FDOC. 199. On June 1, 2017, at approximately 9:45 a.m., Allen Dean Peterson, the Library Services Administrator for FDOC, emailed a copy of Plaintiff Brazill's May 15 letter, to Colonel Jason King, the then chief of security at Charlotte Correctional, with orders to remove Plaintiff Brazill from the law library. 200. At approximately 10:45 a.m., Librarian Marie Olson, Plaintiff Brazill's supervisor, told Plaintiff Brazill to clean out his desk, leave the law library and not return; he was fired. 201. There was no legitimate, non-retaliatory basis for Plaintiff Brazill to be removed from his law clerk assignment on June 1, 2017, at Charlotte Correctional. 202. On June 2, Plaintiff Brazill was summoned to the office of Major Michael Ellis, the assistant chief of security at Charlotte Correctional. 203. While in the office of Major Ellis, Plaintiff

39.

Statement of Facts Continued (Page 32 of 37)
Brazill received a phone call from Senator Powell in relation to his May 15 letter during which Senator Powell thanked him for the letter and assured him that the Florida Legislature was looking into the issue of FDOC banning books. 204. During the June 2 phone call with Senator Powell, Plaintiff Brazill informed Senator Powell of his June 1 termination from his law clerk assignment. 205. On June 30, 2017, Plaintiff Brazill was summoned to the office of Assistant Warden Kara Williams aka Kara Hawkinsen where she discussed with Plaintiff Brazill the issue of his letter to Senator Powell and his termination from his law clerk assignment and informed Plaintiff Brazill of her decision to reinstate Plaintiff Brazill to his assignment as a law clerk. 206. Colonel Jason King was subsequently promoted to the position of Assistant Warden at Polk Correctional Institution. 207. On July 24, 2017, Plaintiff Brazill received a second phone call from Senator Powell regarding the issue of his retaliatory removal from his assignment as a law clerk in the law library. 208. During the July 24 phone call, Senator Powell relayed his discussion of Plaintiff Brazill's retaliatory dismissal from his law clerk assignment, with Jared Torres, the Legislative Affairs Director for the FDOC.

40.

Statement of Facts Continued (Page 33 of 37)
209. In 2018, Plaintiff Brazill was still assigned as a law clerk in the law library at Charlotte Correctional. 210. On October 25, 2018, Plaintiff Brazill personally took the in-person deposition by oral examination of Charlotte Correctional's Assistant Warden Williams in the case of Nathaniel R. Brazill v. Florida Department of Corrections, Charlotte County Circuit Case Number 17-0596-CA. 211. Assistant Warden Williams, who began working for the FDOC in 1994, resented being questioned under oath by an inmate for the first time in her career. 212. On December 20, 2018, Assistant Warden Williams removed Plaintiff Brazill from his law clerk assignment at Charlotte Correctional so he could "learn some new skills." 213. There was no legitimate, non-retaliatory basis for Plaintiff Brazill to be removed from his law clerk assignment on December 20, 2018. 214. On February 14, 2019, Plaintiff Brazill had a telephone conference with Senator Powell where they discussed Assistant Warden Williams's December 20, 2018, decision to remove Plaintiff Brazill from his law clerk assignment and assign him to a work detail collecting trash and mowing grass along the side of the road. 215. On February 19, 2019, Plaintiff Brazill was transferred from Charlotte Correctional and

41.

Statement of Facts Continued (Page 34 of 37)
subjected to "diesel therapy," being transferred
between five correctional institutions, four
reception centers, and four work camps
between February 2019 and February 2022.
216. Despite his multiple requests, Plaintiff
Brazill was systemically denied law clerk
assignments by prison officials at each
facility and be remained without a law
clerk assignment from December 20, 2018,
until January 19, 2022. 217. On December 21,
2022, Plaintiff Brazill's law clerk
certification would have been subject to
suspension and revocation in accordance
with F.A.C. Ch. 33-501.301(7)(6) due to "4-years
hav[ing] passed since he [] worked in a
law library as an inmate law clerk."
218. A reasonably objective person could
conclude that there was a concerted
effort on the part of prison officials
to deny Plaintiff Brazill a law clerk
assignment long enough to force the
automatic revocation of his law clerk
certification. 219. As Secretary, Defendant
Dixon continues to exhibit deliberate
indifference to the widespread, persistent,
and longstanding pattern of prison
officials retaliating against Plaintiff
Brazill and similarly situated inmates or
"writ writers" who complain about prison
conditions, by his failure to take corrective

42.

Statement of Facts Continued (Page 35 of 37) action or discipline subordinates for these known incidents. 220. The threat of retaliation against Plaintiff Brazill is current and ongoing. 221. Defendant Gary Hewett is the warden at Plaintiff Brazill's current facility of Wakulla Correctional Institution Annex. 222. On August 31, 2022, Defendant May and Assistant Regional Director James Coker, the deputy to Defendant Gordon, visited Plaintiff Brazill at his law clerk assignment in the law library at Wakulla Correctional where Plaintiff Brazill was reminded to refrain from filing any grievances to remain in his law clerk position. 223. The absence of any due process or other legal protections has created a well-founded belief in Plaintiff Brazill that if he files a grievance complaining about prison conditions at Wakulla Correctional, he will be removed from his law clerk assignment. 224. At Wakulla Correctional, there is a local institutional policy or practice requiring inmates to wear Class B uniform for Master Roster Count contrary to established FDOC policy. 225. Additionally, beginning on October 20, 2022, Sergeant Valerie E. Huggins, Sergeant Jasmine Perez Green, Sergeant Michael A. Spivey, Jr., Sergeant Jessi Amanda Chunn, and Lieutenant Edison L. Olds, Jr., began enforcing a new local institutional policy or practice

43.

Statements of Facts Continued (Page 36 of 37) at Wakulla Correctional prohibiting inmates from wearing sweatshirts with Class A uniforms in direct contravention to F.A.C. Chapter 33-602.101(2)(a)5.a. 226. Plaintiff Brazill would normally have filed grievances regarding the prohibition on wearing sweatshirts in thirty degree weather but he has been deterred based on his well founded fear that Defendant Hewett would permit his immediate removal from his current law clerk assignment. 227. Plaintiff Brazill has not filed any grievances at Wakulla Correctional due to his fear of losing his law clerk assignment and his desire to remain a law clerk. 228. Plaintiff Brazill's fear is grounded in his person experiences and the persistent, longstanding, and widespread custom and practice of Defendant Dixon permitting the retaliatory denial and withholding of the law clerk privilege from Plaintiff Brazill. 229. Twenty-twenty-two marks the first full year that Plaintiff Brazill has not filed a single grievance since his entry into the custody of the Secretary of the Florida Department of Corrections. 230. Prison officials have shown by their repeated acts that they cannot be trusted with unbridled authority to respect Plaintiff Brazill's constitutional rights such that ongoing court supervision

44.

Statement of Facts Continued (Page 37 of 37) is necessary until Plaintiff Brazill's release from FDOC custody on May 18, 2028. 231. To the corrupt example of others and in violation of Plaintiff Brazill's First Amendment right to complain about prison conditions without being subjected to retaliation, prison official Defendants denied and withheld from Plaintiff Brazill law library assignments as a law clerk and legal typist at Jackson Correctional Institution because he complained about prison conditions at that facility.

45.

1sem

## V. STATEMENT OF CLAIMS

State what rights under the Constitution, laws, or treaties of the United States have been violated. Be specific. If more than one claim is asserted, number each separate claim and relate it to the facts alleged in Section IV. If more than one Defendant is named, indicate which claim is presented against which Defendant.

Count I: First Amendment Retaliation Claim Against Hancock, Jones, and Wood, for the May 12, 2020, Failure to Assign to Law Clerk Position; Count II: First Amendment Retaliation Claim Against Brannon and Crutchfield for the September 8,

## VI. RELIEF REQUESTED

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes. If requesting money damages *(either actual or punitive damages)*, include the amount sought and explain the basis for the claims.

A.) A declaratory judgment declaring unconstitutional Defendants' failure to assign Plaintiff Brazill to the Law Clerk position at Jackson Correctional; B.) A declaratory judgment declaring

Statement of Claims Continued

2020, Failure to Assign to Law Clerk Position; Count III: First Amendment Retaliation Claim Against Hancock for the April 16, 2021, Denial of Legal Typist Position; Count IV: First Amendment Retaliation Claim Against Hancock, Crutchfield, and Peterson, for the May 12, 2021, Failure to Assign to Law Clerk Position; Count V: First Amendment Retaliation Claim Against Hancock, Crutchfield, and Peterson, for the May 12, 2021, Failure to Assign to Legal Typist Position; Count VI: First Amendment Retaliation Claim Against May for the September 14, 2021, Denial of Law Clerk Assignment; Count VII: First Amendment Retaliation Claim Against May for the September 14, 2021, Denial of Legal Typist Assignment; Count VIII: First Amendment Retaliation Claim Against Bush, Shuler, and Floyd, for the December 14, 2021, Failure to Assign to Law Clerk Position; Count IX: First Amendment Retaliation Claim Against Bush, Shuler, and Floyd, for the December 14, 2021, Failure to Assign to Legal Typist Position; Count X: First Amendment Retaliation Claim Against Brannon, May, and Hewett, as Wardens for Supervisory Policies or Customs Evincing Deliberate Indifference to Unlawful Retaliation; Count XI: First Amendment Retaliation Claim Against Gordon as Regional Director for Supervisory Policies or Customs Evincing Deliberate Indifference to Unlawful Retaliation; Count XII:

47.

Statement of Claims Continued
First Amendment Retaliation Claim Against Dixon as Deputy Secretary for Supervisory Policies or Customs Evincing Deliberate Indifference to Unlawful Retaliation; Count XIII: First Amendment Retaliation Claim Against Brannon, May, Gordon, and Dixon, as Supervisors for Failure to Train; Count XIV: Conspiracy To Violate Civil Rights Claim Against Hancock, Jones, Wood, Brannon, Crutchfield, Peterson, May, Bush, Shuler, and Floyd, for the Retaliatory Denials of Law Clerk Assignments; and Count XV: Conspiracy To Violate Civil Rights Claim Against Hancock, Crutchfield, Peterson, May, Bush, Shuler, and Floyd, for the Retaliatory Denials of Legal Typist Assignments.

48.

Relief Requested Continued

unconstitutional Defendants' failure to assign Plaintiff Brazill to the Legal Typist position at Jackson Correctional; C.) A declaratory judgment declaring unconstitutional the policies or customs of supervisory Defendants permitting the unlawful denials of Law Clerk and Legal Typist assignments to Plaintiff Brazill at Jackson Correctional; D.) A declaratory judgment declaring that Defendant Brannon acted with deliberate indifference to unconstitutional retaliation against Plaintiff Brazill; E.) A declaratory judgment declaring that Defendant May acted with deliberate indifference to unconstitutional retaliation against Plaintiff Brazill; F.) A declaratory judgment declaring that Defendant Gordon acted with deliberate indifference to unconstitutional retaliation against Plaintiff Brazill; G.) A declaratory judgment declaring that Defendant Dixon acted with deliberate indifference to unconstitutional retaliation against Plaintiff Brazill; H.) An injunction ordering the transfer and assignment of Plaintiff Brazill to a Law Clerk Assignment at Jackson Correctional as corrective action to the unconstitutional retaliation; I.) Alternatively, an injunction ordering the transfer and assignment of Plaintiff Brazill to a Law Clerk Assignment at Sago Palm Re-Entry Center to remedy the constitutional violation; J.) A temporary and permanent injunction order against Defendant Hewett in his official capacity only as Warden

49.

Relief Requested Continued
at Wakulla Correctional, and his successors, enjoining the removal of Plaintiff Brazill from his law clerk assignment in the law library at Wakulla Correctional; K.) A permanent injunction order enjoining the removal of Plaintiff Brazill from any Law Clerk Assignment without prior court approval; L.) A permanent injunction order enjoining the revocation of Plaintiff Brazill's Law Clerk certification without prior court approval; M.) A monetary judgment against each Defendant sued in his or her individual capacity awarding Plaintiff Brazill nominal damages from each Defendant individually and severally in the amount of one hundred dollars ($100); N.) A monetary judgment against each Defendant sued in his or her individual capacity awarding Plaintiff Brazill punitive damages from each Defendant individually and severally in the amount of ninety thousand dollars ($90,000); O.) A judgment awarding Plaintiff Brazill taxable costs for the prosecution of this action; P.) A judgment awarding Plaintiff Brazill reasonable Attorney's fees following the appearance of counsel; Q.) A trial by jury on all issues of fact; and R.) Any further relief deemed just and proper.

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies (*grievance procedures*) before bringing a case. 42 U.S.C. § 1997e(a). **ATTENTION:** *If you did not exhaust available remedies prior to filing this case, this case may be dismissed.* If the case is dismissed for failure to exhaust or for any reason, you will still be required to pay the full filing fee and the dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Therefore, please consider whether you have fully exhausted your remedies before proceeding with this action.

## VIII. PRIOR LITIGATION

*This section requires you to identify your prior litigation history. Be advised that failure to disclose all prior state and federal cases—including, but not limited to civil cases, habeas cases, and appeals—may result in the dismissal of this case. You should err on the side of caution if you are uncertain whether a case should be identified.*

**ATTENTION:** *The "three strikes rule" of the PLRA bars a prisoner from bringing a case without full payment of the filing fee at the time of case initiation if the prisoner has "on three or more prior occasions, while*

*incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).*

A. Have you had any case in federal court, including federal appellate court, dismissed as frivolous, as malicious, for failure to state a claim, or prior to service?

☑ YES    ☐ NO

If "Yes," identify the case number, date of dismissal, and court for each case:

1. Date: 08/04/2009 Case #: 2:09-cv-415-SPC-UM
   Court: Middle District — Fort Myers Division
   Reason: Prior to Service

2. Date: 09/03/2014 Case #: 2:10-cv-458-JES-DNF
   Court: Middle District — Fort Myers Division
   Reason: Joint Voluntary Dismissal

3. Date: 12/29/2017 Case #: 8:14-cv-3131-JDW-JSS
   Court: Middle District — Tampa Division
   Reason: Failure to State a Claim

A. (Continued)

4. Date: Filed   07/24/2015     Case #: 8:15-cv-1725-MSS-AAS
   Court: Middle   District – Tampa   Division
   Reason: Failure   to   State   a   Claim

5. Date: 04/05/2019          Case #: 2:17-cv-394-SPC-MC
   Court: Middle   District – Fort   Myers   Division
   Reason: Voluntary   Dismissal

*(If necessary, list additional cases on an attached page)*

B. Have you filed other lawsuits or appeals in **state or federal court** dealing with the same facts or issue involved in this case?

☑ YES ☐ NO

If "Yes," identify the case number, parties, date filed, result (*if not still pending*), name of judge, and court for each case (*if more than one*):

1. Case #: 5:21-cv-99    Parties: Jonathan Jones, et al.

    Court: Panama City Division Judge: T. Kent Wetherell, II

    Date Filed: 05/10/2021 Dismissal Date (*if not pending*): Pending

    Reason: N/A

2. Case #:_____ Parties: _____

    Court:_____Judge: _____

    Date Filed:_____Dismissal Date (*if not pending*): _____

    Reason: _____
    *(If necessary, list additional cases on an attached page)*

C. Have you filed any other lawsuit, habeas corpus petition, or appeal in **state or federal court** either challenging your conviction or relating to the conditions of your confinement?.

☑ YES ☐ NO

If "Yes," identify all lawsuits, petitions and appeals:

1. Case #: _2:09-cv-415_ Parties: _Walter A. McNeil, et al._

   Court: _U.S. Middle District_ Judge: _Sheri Polster Chappell_

   Date Filed: _06/29/09_ Dismissal Date (*if not pending*): _08/04/09_

   Reason: _Prior to Service_

2. Case #: _09-CA-3546_ Parties: _Walter A. McNeil, et al._

   Court: _Second Judicial Circuit_ Judge: _John C. Cooper_

   Date Filed: _09/11/09_ Dismissal Date (*if not pending*): _N/A_

   Reason: _Moot_

3. Case #: _2:10-cv-458_ Parties: _Beth E. Cowart, et al._

   Court: _U.S. Middle District_ Judge: _John E. Steele_

   Date Filed: _07/21/10_ Dismissal Date (*if not pending*): _09/03/14_

   Reason: _Voluntary Dismissal_

4. Case #: _8:14-cv-3131_ Parties: _John Miners, et al._

   Court: _Tampa Division_ Judge: _James D. Whittemore_

   Date Filed: _12/16/14_ Dismissal Date (*if not pending*): _12/29/17_

   Reason: _Failure to State a Claim_

5. Case #: _8:15-cv-1725_ Parties: _Larry P. Olson & Belinda S. Deen_

   Court: _Tampa Division_ Judge: _Mary S. Scriven_

   Date Filed: _07/24/15_ Dismissal Date (*if not pending*): _____

   Reason: _Failure to State a Claim_

6.  Case #: 2:17-cv-394  Parties: Allen Dean Peterson & Jason King

Court: Fort Myers Division Judge: Sheri Polster Chappell

Date Filed: 07/13/17 Dismissal Date (*if not pending*): 04/05/19

Reason: Voluntary Dismissal

(*Attach additional pages as necessary to list all cases.*)

(Continued on page 57)

## IX. CERTIFICATION

1.  I declare, under penalty of perjury, that all of the information stated above and included on or with this form, including my litigation history, is true and correct.

2.  Additionally, as required by Federal Rule of Civil Procedure 11, I certify that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non- frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

NDFL Pro Se 14 (Revised June 2022) Civil Rights Complaint Prisoner
ClerkAdmin/Official/Forms

C. (Continued)

7. Case #: 17-0596-CA          Parties: Florida Department of Corr.
   Court: Twentieth Judicial Circuit    Judge: Lisa Porter
   Date Filed: 07/05/17
   Reason: Sanction

8. Case #: 2D19-0328          Parties: Florida Department of Corr.
   Court: Second Appellate District    Judge: N/A
   Date Filed: 01/25/2019    Dismissal Date (if not pending): 04/03/19
   Reason: Voluntary Dismissal

9. Case #: 5:21-cv-99          Parties: Jonathan Jones, et al.
   Court: Panama City Division    Judge: T. Kent Wetherell, II
   Date Filed: 05/10/21    Dismissal Date (if not pending): Pending
   Reason: N/A

3. I understand it is my obligation to timely notify the Clerk's Office if there is any change to my mailing address and that my failure to do so may result in a dismissal of the action.

Date: 03/08/23 Plaintiff's Signature: *Nathaniel R. Brazill*

Printed Name of Plaintiff: Nathaniel R. Brazill

Correctional Institution: Wakulla Correctional Institution Annex

Address: 110 Melaleuca Drive

Crawfordville, FL 32327-4963

**I certify and declare, under penalty of perjury, that this complaint was (*check one*) ☐ delivered to prison officials for mailing or ☑ deposited in the prison's mail system for mailing on the 8th day of Mar., 2023.**

Signature of Incarcerated Plaintiff: *Nathaniel R. Brazill*

Nathaniel
Wakulla Correctional Institution Annex
110 Melaleuca Drive
Crawfordville, FL 32327-4963




Clerk of the Court
United States District Court
1 North Palafox Street
Pensacola, FL 32502-5658

MAR 2 3 2023