## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

NATHANIEL R. BRAZILL,

     Plaintiff,

v.                                                      Case No.  5:23-cv-67-TKW-MJF

CHRISTOPHER R. BRANNON, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Nathaniel Brazill alleges that several prison officials retaliated against him for filing grievances by denying him work assignments as a law clerk and legal typist at the Jackson Correctional Institution. Doc. 10. Defendants move for summary judgment. Docs. 57, 77. Brazill opposes the motion on procedural grounds. Doc. 80. Defendants' motion for summary judgment should be granted.

## I.  BACKGROUND

### A.  Brazill's Amended Complaint

Brazill is an inmate of the Florida Department of Corrections ("FDC") currently housed at the Wakulla Correctional Institution. Brazill

filed this civil action pursuant to 42 U.S.C. § 1983. Brazill's amended complaint names as Defendants the following thirteen prison officials: FDC Director of Institutional Operations Christopher Brannon; Santa Rosa CI Assistant Warden of Operations Jonathan Jones; Jackson CI Assistant Warden of Programs Glenn Hancock; Jackson CI Senior Classification Officer Scott Bush; Jackson CI Senior Classification Officer B. Wood; Jackson CI Major James Crutchfield; Jackson CI Classification Supervisor Mary Peterson; Jackson CI Assistant Warden of Operations Jerry Shuler; Jackson CI Colonel Joseph Floyd; Jackson CI Warden Scott May; FDC Regional Director Angela Gordon; FDC Secretary Ricky Dixon; and Wakulla CI Warden Gary Hewett. Doc. 10 at 2–7. Brazill is suing Dixon in his individual and official capacities, Hewett in his official capacity, and all other Defendants in their individual capacities. *Id.*

On March 18, 2024, Brazill voluntarily dismissed Defendants Wood and May. Doc. 72. That leaves Brazill's First-Amendment retaliatory-work-assignment claims against Jones, Hancock, Bush, Crutchfield, Peterson, Shuler, and Floyd. Brazill seeks to hold Brannon, Gordon and Dixon liable as supervisors of those seven Defendants. Brazill sues

Hewett for the limited purpose of enforcing injunctive relief at Wakulla

CI, where Brazill currently is housed. Doc. 10 at 19–21.

As relief in this lawsuit, Brazill seeks the following:

● a declaration that the Defendants violated the First Amendment,

● a permanent injunction requiring FDC officials to assign Brazill
to a law clerk position at Jackson CI or Sago Palm Re-Entry Center,

● a permanent injunction enjoining FDC officials from removing
Brazill from any law clerk assignment without prior court approval,

● a permanent injunction enjoining FDC officials from revoking
Brazill's law clerk certification without prior court approval, and

● nominal and punitive damages against the individual
Defendants.

*Id.* at 19, 22–23.

## B.  <u>Defendants' Motion for Summary Judgment</u>

Defendants assert that they are entitled to summary judgment

because: (1) Brazill's claims are barred by the statute of limitations; (2)

Brazill's allegations fail to state a First-Amendment retaliation claim

against any Defendant; and (3) Defendants are entitled to qualified

immunity. Doc. 57. Separately, Defendants argue that in the event any

claim survives summary judgment, portions of Brazill's demand for

injunctive relief should be dismissed, and Brazill's potential recovery of damages should be limited to $1.00.

## C.  **Brazill's Response**

Brazill opposes Defendants' motion for summary judgment on procedural grounds. Doc. 80. Brazill asserts that summary judgment is improper because the parties have not conducted discovery.

## II.   THE DISTRICT COURT PROPERLY MAY CONSIDER DEFENDANTS' SUMMARY-JUDGMENT MOTION ON THE MERITS

## A.  **Procedural History  of Defendants' Pre-Discovery Summary-Judgment Motion**

On December 12, 2023, after most Defendants had appeared in the case, Defendants filed a notice of a similar case pending in this District Court, namely, *Brazill v. Jones*, No. 5:21cv99-TKW-MJF. *See* Doc. 39. In the similar case, Brazill asserted a retaliatory-transfer claim against many of the same Defendants arising out of Brazill's grievance-writing at Graceville CI and his transfer from Graceville to Jackson CI on January 24, 2020. The retaliatory-work-assignment claims raised here occurred after Brazill was transferred to Jackson CI.

Also on December 12, 2023, Defendants filed a motion for leave to file a pre-discovery summary-judgment motion. Doc. 40. Defendants

maintained that Brazill's allegations of retaliation in Case No. 5:21-cv-99-TKW-MJF were similar to—and intertwined with—Brazill's allegations of retaliation against many of the same Defendants in the present case. Doc. 40. Defendants asserted that Brazill had conducted extensive discovery in the related case, and that during the discovery and summary-judgment proceedings in the related case, it was revealed that Brazill's factual allegations against almost all of the Defendants were unfounded and had no evidentiary support. Defendants sought leave to file a pre-discovery summary-judgment motion, because Brazill had ready access via his similar case to evidence that would be relevant to his retaliation claims in this case.

Brazill had fourteen days to oppose Defendants' motion for leave to file a summary-judgment motion. *See* N.D. Fla. Loc. R. 7.1. Brazill did not file an opposing memorandum—or any other response—to Defendants' motion to file a pre-discovery summary-judgment motion.

On December 27, 2023, the undersigned authorized Defendants to file a pre-discovery summary-judgment motion. Doc. 47. Brazill did not object to the undersigned's order.

Thereafter, Defendants sought—and on January 11, 2024 the undersigned granted—additional time for Defendants to file their summary-judgment motion. Docs. 48, 50. Brazill still did not oppose or object to Defendants' filing a pre-discovery summary-judgment motion.

On February 2, 2024, Defendants filed their summary-judgment motion. Doc. 57. On February 16, 2024, the undersigned ordered Brazill to respond by March 18, 2024. Doc. 62.

On February 20, 2024, Brazill requested a 30-day extension to respond. Doc. 65. In support, Brazill asserted that he (1) "will file a response opposing summary judgment"; (2) "is diligently working to complete his response and address each issue in Defendants' motion"; and (3) "is working through various drafts to ensure his response thoroughly counters each point raised by Defendants." Doc. 65 ¶¶ 3, 4, 5. Notably, Brazill did not mention any need to conduct discovery. The undersigned granted the requested extension and extended Brazill's response deadline to March 24, 2024. Doc. 66.

On March 19, 2024, Brazill moved for an additional 20-day extension, citing the same reasons as before. Doc. 70 ¶ 3 (asserting that he "was diligently working to prepare a response opposing each of

Defendants' spaghetti-on-the-wall issues."). Again, Brazill did not mention a need for discovery. The undersigned granted the extension and extended Brazill's response deadline to April 15, 2024. Doc. 74.

On April 8, 2024, Brazill moved for an additional 15-day extension. Doc. 75. In support, Brazill stated that he "is now working to complete the final draft" and expected that it would "be the final request" to extend his response deadline. *Id*. ¶¶ 3–4. Again, Brazill did not mention a need for discovery. The undersigned granted the extension and extended Brazill's response deadline to April 30, 2024. Doc. 76.

That was not Brazill's final request to extend the response deadline. On April 25, 2024, Brazill moved for an additional 10-day extension. Doc. 78. Brazill argued that "[d]ue to a significant recent development in Plaintiff's other case [Case No. 5:21-cv-99-TKW-MJF], Plaintiff had to make some changes to his response opposing summary judgment which will further undermine Defendants' ostensible explanations in this case." *Id*. ¶ 4. The undersigned denied the extension because Brazill's allegations failed to establish diligence or good cause for an additional extension. Doc. 79. The undersigned advised the parties that on May 9, 2024, Defendants' summary-judgment motion would be deemed

submitted on the motion, the pleadings, and the evidentiary materials filed in this case and that any documents or evidence filed after the submission date would not be considered by the District Court absent a showing of exceptional circumstances. Doc. 79.

On May 8, 2024, Brazill filed his response to Defendants' summary-judgment motion. Doc. 80. Despite Brazill's contention that he would oppose each ground of Defendants' motion on the merits, Brazill maintains that the District Court should deny the motion as "premature," because "there has been no discovery." *Id*. at 4. Brazill does not identify what discovery he needs, nor does Brazill show how discovery would enable him to create a genuine issue of material fact regarding Defendants' alleged retaliation. *Id*. at 5. Instead, Brazill argues:

> Brazill should be permitted to conduct discovery as discovery is part of the price any defendant pays when they engage in the kind of unlawful conduct alleged by Brazill. And because key evidence lies in the control of Defendants, during discovery Brazill should be permitted to use the full arsenal of tools authorized by rule. If Defendants desire to blame someone for the burden of discovery, they need only look in the mirror.

Doc. 80 at 5.

**B.    Discussion**

Federal Rule of Civil Procedure 56(b) does not preclude a party from promptly filing a motion for summary judgment. *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843–44 (11th Cir. 1989). "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Early summary-judgment motions can save considerable expense and, in some circumstances, are entirely appropriate.

There are several reasons why the District Court should reject Brazill's discovery-based argument opposing summary judgment. First, Brazill waived his objection that a pre-discovery summary-judgment motion was improper by failing to raise it earlier. Brazill did not file a memorandum (or any other response) opposing Defendants' motion seeking to file a pre-discovery summary-judgment motion. *See* Doc. 40 (Defs.' Mot.); *see also* N.D. Fla. Loc. R. 7.1(E) (setting a 14-day response deadline).

In addition, Brazill did not object to the undersigned's order granting Defendants' motion for leave to file a pre-discovery summary-

judgment motion. *See* Doc. 47 (Order); *see also* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the [magistrate judge's] order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.").

Third, after Defendants filed their summary-judgment motion and the undersigned set a response deadline, Brazill sought multiple extensions of time claiming that he was addressing Defendants' motion on the merits. *See* Docs. 65, 70, 75, 78. Not once did Brazill suggest that he needed to conduct discovery or that the evidentiary record was inadequate.

In addition to waiving his objection that summary judgment is improper because the parties have not conducted discovery, Brazill has not satisfied the Rule 56 standard for delaying this summary-judgment proceeding to allow him to seek discovery. Brazill has not "shown by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition" to any point raised in Defendants' summary-judgment motion. Fed. R. Civ. P. 56(d). Brazill's unsworn memorandum of law does not suffice. Doc. 80.

Even if sworn, Brazill's memorandum fails to satisfy Rule 56(d). Brazill merely asserts general complaints about wanting discovery. Doc. 80. Brazill does not identify what specific discovery he needs to conduct, or what particular information the discovery would provide. "In seeking the protection of Rule 56(d), the non-movant must show that postponement of a ruling on the motion will enable [him], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. Vague assertions that additional discovery will produce needed, but unspecified facts fail to meet this burden." *Smedley v. Deutsche Bank Trust Co. Ams.*, 676 F. App'x 860, 861–62 (11th Cir. 2017) (internal quotation marks omitted) (citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990)); *Burns v. Town of Palm Beach*, 343 F. Supp. 3d 1258, 1262 (S.D. Fla. 2018) (plaintiff's declaration was insufficient to satisfy Rule 56(d) because the declaration "did not specifically demonstrate facts he could discover that would rebut the [summary-judgment] Motion."). And Brazill fails to identify any aspect of the evidentiary record that is incomplete.

In short, Brazill wholly fails to explain how any particular discovery likely would enable him to create a genuine dispute of material fact

regarding Defendants' alleged retaliation. *See, e.g., Jackson v. Papillon*, No. 21-11686, 2021 WL 5918424, at *2 n.2 (11th Cir. Dec. 15, 2021) (rejecting prisoner's argument that district court prematurely granted defendants' summary-judgment motion while prisoner's discovery request was pending; prisoner "fail[ed] to show how his outstanding request for documents would have enabled him to create a genuine issue of material fact regarding the doctors' alleged deliberate indifference.").

It also bears noting—and judicial notice is taken—that the discovery materials filed by Brazill and the defendants in Brazill's related case (Case No. 5:21-cv-99-TKW-MJF) demonstrate that Brazill propounded discovery requests to these same defendants relating to his job assignments at Jackson CI, and the defendants answered the discovery requests. *See* Doc. 104, Exs. N, O, Q; Doc. 111-1. Thus, Brazill has had an opportunity to conduct discovery.

Brazill essentially urges the District Court to deny Defendants' motion and to order discovery to ensure that Defendants bear the full burden—financial and temporal—of defending against Brazill's claims. But that is not a proper purpose for taking discovery. *See* Fed. R. Civ. P. 26(b)(1) (defining the permissible scope of discovery); Fed. R. Civ. P.

26(g)(1)(B)(ii) (a party's signature on a discovery request certifies that the request is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

For all of these reasons, the District Court should reject Brazill's procedural opposition to Defendants' summary-judgment motion, and should consider the motion on the merits.

### III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

### A.   <u>The Summary-Judgment Standard</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A fact is "material" if it could affect the

outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

## B.    <u>The Qualified Immunity Standard</u>

Qualified immunity provides "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002). To receive qualified immunity, the public official "must first prove that he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019). At that point, the burden shifts to the plaintiff to prove that the defendant violated a constitutional right that was clearly established at the time of the alleged violation. *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009).

"For a right to be clearly established, the plaintiff may either identify precedents with materially similar facts or show that the violation was so obvious that every reasonable officer would know that his actions were unconstitutional." *Washington v. Warden*, 847 F. App'x

734, 737 (11th Cir. 2021) (citing *Corbitt v. Vickers*, 929 F.3d 1304, 1311–12 (11th Cir. 2019); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks and citation omitted). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 583 U.S. at 63 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

C.    **The First-Amendment Retaliation Standard**

To prove a First-Amendment retaliation claim, "an inmate needs to show (1) that his speech or act was constitutionally protected, (2) that he suffered an adverse action from prison officials that would deter a person of ordinary firmness from engaging in such speech or act, and (3) that the protected speech or conduct and adverse action were causally connected." *Smith v. Governor for Ala.*, 562 F. App'x 806, 815 (11th Cir. 2014) (citing *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)).

To establish a causal connection, "the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance." *Smith*, 562 F. App'x at 815 (citing *Mosley*, 532

F.3d at 1278). "This motive analysis is subject to a burden-shifting framework." *Williams v. Radford*, 64 F.4th 1185, 1193 (11th Cir. 2023). First, the prisoner "must show that his constitutionally-protected speech was a 'motivating factor' in [the defendant's] decisions to carry out the adverse actions." *Williams*, 64 F.4th at 1193 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). If the prisoner satisfies that burden, then the defendant "must show that he would have implemented those adverse actions irrespective of [the prisoner's] complaints." *Williams*, 64 F.4th at 1193; *see also Mosley*, 532 F.3d at 1278 (applying the *Mt. Healthy* burden-shifting framework to the prison context: "[O]nce the plaintiff . . . establish[es] that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he . . . prevail[s] on . . . summary judgment." (quotation omitted)).

## D.    The Undisputed Material Facts

The material facts set forth below are drawn from (1) material, specific sworn factual assertions in Brazill's First Amended Complaint that are based on his personal knowledge and which Defendants do not

dispute, Doc. 10; and (2) Defendants' factual assertions in their summary-judgment motion and unobjected-to evidentiary materials filed therewith. Doc. 57 & Attach.; Doc. 77 & Attach.[1] The Defendants' factual assertions are considered undisputed because Brazill failed to address any of Defendants' asserted facts in his opposition to their summary-judgment motion. *See* Fed. R. Civ. P. 56(e)(2).

On January 8, 2020, Brazill was transferred to the Graceville Work Camp. Doc. 57-2, Ex. B at 7. While at Graceville, Brazill filed grievances complaining that inmates were required to wear "Class A" uniforms in the canteen and for formal counts. Doc. 10 ¶ 4. On January 23, 2020, Defendant Jones directed that Brazill be transferred from Graceville to Jackson CI. Doc. 57-5, Ex. E, Jones Decl. ¶ 6; Doc. 57-8, Ex. H, Email Exchange. The court takes judicial notice that in the related case, there is a genuine factual dispute concerning whether Jones's transfer of

---

[1] The evidentiary materials filed with Defendants' summary-judgment motion consist of summary-judgment materials they filed in the related case as well as new materials. Doc. 57; Doc. 77. Thus, the undersigned has not cross-cited evidentiary materials from the related case, *Brazill v. Jones*, No. 5:21-cv-99-TKW-MJF.

Brazill was in retaliation for Brazill's grievance-writing. *See Brazill v. Jones*, No. 5:21cv99-TKW-MJF, Docs. 113, 115.

Brazill was transferred to Jackson CI on January 24, 2020. Doc. 57-2, Ex. B at 7. On January 28, 2020, Brazill was assigned to food service. Doc. 57-7, Ex. G, Hancock Decl. ¶ 8.

On May 12, 2020, Brazill had a work assignment interview with Jones, Hancock and Wood (a Defendant whom Brazill has since dismissed). Doc. 10 ¶ 9. Brazill was assigned to food service even though he had a Law Clerk Certificate. Doc. 57-11, Ex. K, Hancock Decl. ¶ 9; Doc. 77-1, Ex. A, Jones Decl. ¶ 9.

The fact that Brazill had a Law Clerk Certificate did not guarantee that there would be an opening in the Law Library or that Brazill would be used to fill an opening that might exist. Doc. 57-10, Ex. J, Brannon Decl. ¶ 5; Doc. 57-11, Ex. K, Hancock Decl. ¶ 5; Doc. 77-1, Ex. A, Jones Decl. ¶ 5. Having a Law Clerk assignment generally is considered to have additional privileges in the sense that inmates in a Law Clerk position have more freedom of movement and are not supervised as closely as inmates in other positions. Doc. 57-10, Ex. J, Brannon Decl. ¶ 6; Doc. 57-11, Ex. K, Hancock Decl. ¶ 6; Doc. 77-1, Ex. A, Jones Decl. ¶ 6. The Law

Library itself is an area that often is a meeting place for members of Special Threat Groups and is used for contraband exchanges. Doc. 57-10, Ex. J, Brannon Decl. ¶ 6; Doc. 57-11, Ex. K, Hancock Decl. ¶ 6; Doc. 77-1, Ex. A, Jones Decl. ¶ 6.

Brazill was not assigned to be a Law Clerk because (1) at the time of the work assignment there was not an institutional need for a Law Clerk that Brazill could fulfill; (2) assigning Brazill to a Law Clerk position would have posed a threat to the safety and security of the institution because Brazill recently had been convicted of introducing contraband (a cell phone) on March 14, 2019, while housed at the Marion Work Camp; (3) Brazill had attempted to circumvent the process for requesting a job change by attempting to resign from his food service position despite the fact that there was no mechanism for inmates to resign from job assignments because they cannot dictate their work assignments; and (4) Brazill would be supervised at a normal level in a food service assignment and would not have the opportunity to traffic contraband that might otherwise be available—or that may have tempted him—if he was assigned to the Law Library. Doc. 57-3, Ex. C,

DR Log #364-190037; Doc. 57-11, Ex. K, Hancock Decl. ¶¶ 4–5, 7–9; Doc. 77-1, Ex. A, Jones Decl. ¶¶ 4–5, 7–9.

Although Hancock had informed Brazill in an earlier grievance response that Brazill was identified as a certified law clerk and transferred from Graceville to Jackson CI "for utilization as necessary," the four factors described above were the reasons for the work-assignment decision on May 12, 2020. Doc. 10 ¶ 7; Doc. 57-10, Ex. J, Brannon Decl. ¶ 7; Doc. 57-11, Ex. K, Hancock Decl. ¶ 7; Doc. 77-1, Ex. A, Jones, Decl. ¶ 7.

On September 8, 2020 Brazill met with Brannon and Crutchfield. Doc. 10 ¶ 10. Brazill complained that the denial of a Law Clerk assignment on May 12, 2020, was retaliatory, and requested a reassignment to Law Clerk. *Id*. ¶ 10. Brannon and Crutchfield denied Brazill's request for a Law Clerk assignment for the same four reasons (availability, security, etc.) Brazill was denied a Law Clerk assignment on May 12, 2020. Doc. 57-10, Ex. J, Brannon Decl. ¶¶ 4–5, 7–9, 12–14; Doc. 57-12, Ex. L, Crutchfield Decl. ¶¶ 4–5, 7–12.

In April 2021, Officer T. Waterworth, the Law Library supervisor, "interviewed" Brazill for a Legal Typist position in the Law Library. Doc.

10 ¶ 13. Hancock declined to change Brazill's work assignment to a Legal Typist for the same security-based reasons Brazill previously had not been assigned to the Law Library. Doc. 10 ¶ 14; Doc. 57-11, Ex. K, Hancock Decl. ¶¶ 10–13.

On May 12, 2021, Brazill had a work assignment interview with Hancock, Crutchfield and Peterson. Doc. 10 ¶ 16. Brazill was not given a work assignment in the Law Library for the same four reasons (availability, security, etc.) he previously had not been given that assignment. Doc. 57-11, Ex. K, Hancock Decl. ¶¶ 4–6, 8–13; Doc. 57-12, Ex. L, Crutchfield Decl. ¶¶ 4–6, 8–12; Doc. 57-15, Ex. O, Peterson Decl. ¶¶ 4–6, 8–12.

On October 18, 2021, Brazill mailed a letter to Gordon in which Brazill complained that Hancock's work assignments were retaliatory. Doc. 10 ¶ 19. On October 28, 2021, Floyd and other officers (non-parties) told Brazill that he would never work in the Law Library because of his grievances. Doc. 10 ¶ 20.

On December 14, 2021, Brazill had a work assignment interview with Bush, Shuler and Floyd. Doc. 10 ¶ 23. Brazill was not given a work assignment in the Law Library for the same four reasons he previously

was not given a work assignment in the Law Library. Doc. 57-16, Ex. P, Bush Decl. ¶¶ 4–6, 8–12; Doc. 57-14, Ex. N, Shuler Decl. ¶¶ 4–6, 8–12; Doc. 57-13, Ex. M, Floyd Decl. ¶¶ 4–6, 8–12.

On December 27, 2021, Brazill was transferred to the Wakulla Correctional Institution in order to fill an institutional need requiring a Law Clerk, and was assigned a Law Clerk position. Doc. 10 ¶ 26; Doc. 57-27, Ex. AA, Hewett Decl ¶ 7; Doc. 57-2, Ex. B at 7; Doc. 57-10, Ex. J, Brannon Decl. ¶ 15; Doc. 57-11, Ex. K, Hancock Decl. ¶14; Doc. 57-12, Ex. L, Crutchfield Decl. ¶ 13; Doc. 57-13, Ex. M, Floyd Decl. ¶ 13; Doc. 57-14, Ex. N, Shuler Decl. ¶ 13; Doc. 57-15, Ex. O, Peterson Decl. ¶ 13; Doc. 57-16, Ex. P, Bush Decl. ¶ 13; Doc. 77-1, Ex. A, Jones Decl. ¶ 14.

While at Wakulla CI, Brazill twice was convicted of disciplinary charges for Unauthorized Possession of a Cellular Device. Doc. 57-17, Ex. Q (DR Log #122-231146); Doc. 57-18, Ex. R (DR Log #122-232350). The first conviction—in June 2023—was based on an officer finding an AT&T touch screen cellular device inside of Brazill's expandable file folder that was in a cut out of his legal work. Doc. 57-17, Ex. Q at 2–3. The second conviction—in December 2023—was based on an officer finding a

smartphone with attached USB and adapter hidden between the blankets and sheets of Brazill's mattress. Doc. 57-18, Ex. R at 2–3.

**F.   Discussion**

**1.   *Retaliatory-Work-Assignment Claims Against Jones, Hancock, Brannon, Crutchfield, Peterson, Bush, Shuler and Floyd***

Brazill claims that Jones, Hancock, Brannon, Crutchfield, Peterson, Bush, Shuler and Floyd retaliated against him for filing grievances by not assigning him to work in the Law Library even though he was qualified to be a Law Clerk and Legal Typist. Doc. 10 at 19–20 (Counts I–V, VIII–IX).[2]

It is undisputed that Jones, Hancock, Brannon, Crutchfield, Peterson, Bush, Shuler and Floyd were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. Thus, to overcome their assertion of qualified immunity, Brazill must show (1) that these Defendants violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019).

---

[2] Counts VI and VII were retaliatory-work-assignment claims against Defendant May, but Brazill has voluntarily dismissed May. *See* Doc. 72.

Brazill's retaliation claims fail on the first prong of the qualified-immunity analysis. Even assuming to Brazill's benefit—without deciding—that the allegations of his amended complaint make a prima facie showing of retaliatory harm, Defendants' affidavits establish that the work assignments to positions other than the Law Library would have occurred "in the absence of the protected activity." *Mosley*, 532 F.3d at 1278 ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on. . . summary judgment." (internal quotation marks and citation omitted)).

Brazill does not dispute Defendants' legitimate, non-retaliatory explanations for not assigning him to the Law Library. He does not deny that at the time each assignment was made, there was not an institutional need for a Law Clerk that he could fulfill. He does not deny that he had a history of hiding contraband (the disciplinary conviction for Introduction of Contraband in March 2019). He does not deny that inmates in a Law Clerk position at Jackson CI have more freedom of movement and are not supervised as closely. He does not deny that the Law Library at Jackson CI is an area that often is a meeting place for Special Threat Groups and used for contraband exchanges. And he does

Page 24 of 31

not deny that he attempted to circumvent the process for requesting a job change by attempting to resign from his job assignment in food service.

All of Defendants' stated reasons were legitimate, non-retaliatory reasons behind their decisions to assign Brazill to positions other than in the Law Library. Brazill has not produced any affirmative evidence from which a reasonable jury could find that retaliation was the but-for cause of the work assignments. Because Defendants have met their burden of showing that the work assignments would have been made even in the absence of filing grievances, Jones, Hancock, Brannon, Crutchfield, Peterson, Bush, Shuler and Floyd are entitled to summary judgment in their favor on Brazill's retaliatory-work-assignment claims. *See Hinson v. Bias*, 927 F.3d 1103, 1115–16 (11th Cir. 2019) ("It is not enough for the nonmoving party to merely assert that the jury might, and legally could, disbelieve the moving party's evidence. Instead, the nonmoving party must present affirmative evidence that would allow a reasonable jury to rule for him." (internal quotations marks and citation omitted) (alteration adopted)); *see also, e.g., Jacoby v. Baldwin County*, 666 F. App'x 759, 762–63 (11th Cir. 2016) (granting summary judgment to prison official on prisoner's retaliatory-transfer claim because prisoner's

complaint offered only bare assertions that transfer was retaliatory, and even assuming grievances were a motivating factor, prisoner did not dispute official's other legitimate, non-retaliatory explanations for transferring him).

> ## 2. *Failure-to-Train and Failure-to-Supervise Claims Against Brannon and Gordon*

Brazill asserts a separate supervisory liability claim against Brannon "for Customs and Practices Evincing Deliberate Indifference to Alleged First Amendment Retaliation." Doc. 10 at 20–21 (Count X). Brazill also asserts supervisory liability claims against Gordon "as Regional Director" on theories of failure-to-train and failure-to-supervise. Doc. 10 at 20–21 (Counts XI, XIV).

In support of these claims, Brazill's amended complaint makes these bare, conclusory allegations:

> Warden Brannon, Warden May, and Regional Director Gordon held supervisory authority to control, direct, train, and discipline employees at Jackson C.I. but adopted and maintained customs and practices permitting unlawful retaliation.

> After becoming aware of their subordinates" unlawful retaliatory motive, Brannon, May, and Gordon failed to stop subordinates at Jackson C.I. from continuing the campaign of unlawfully denying Brazill positions in the law library.

Doc. 10 ¶¶ 29, 30.[3]

"There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 821 (11th Cir. 2017). Circuit precedent has long recognized this logic. *See Mann*, 588 F.3d at 1308 (supervisory-liability claim must fail "because the underlying Section 1983 claims fail"); *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005) (plaintiff could not maintain a § 1983 action for supervisory liability because his constitutional rights were not violated); *Steen v. City of Pensacola*, 809 F. Supp. 2d 1342, 1349 (N.D. Fla. 2011) ("[I]f the underlying Section 1983 claim fails, *a fortiori*, so does the supervisory liability claim."); *Stringer v. Doe*, 503 F. App'x 888, 891 (11th Cir. 2013) ("Stringer's claim of failure to train or supervise against the sheriff fails because he was unable to state a constitutional claim against any non-supervisory state actor.").

Because no reasonable juror could find in favor of Brazill on any of his retaliation claims against the non-supervisory Defendants, Brazill's

---

[3] Again, Brazill has voluntarily dismissed May. *See* Doc. 72.

supervisory liability claims against Brannon and Gordon for failure to train and supervise fail. Brannon and Gordon are entitled to summary judgment in their favor.

### 3.   *Failure-to-Supervise and Failure-to-Train Claims Against Dixon*

Brazill asserts failure-to-train and failure-to-supervise claims against Dixon "as Deputy Secretary." Doc. 10 at 20–21 (Counts XII, XV). Although Brazill's amended complaint contains lengthy allegations about past, unrelated incidents of retaliation in the FDC, and a conversation Brazill had with Dixon in 2015 reporting what Brazill perceived as retaliation, Doc. 10 ¶¶ 33–43, his claims against Dixon fail for the same reason his supervisory-liability claims against Brannon and Gordon fail. There can be no policy-based liability or supervisory liability against Dixon when there is no underlying constitutional violation. *Knight*, 856 F.3d at 821. For this reason, Dixon is entitled to summary judgment in his favor.

### 4.   *Claim for Injunctive Relief Against Hewett*

Brazill asserts a claim for injunctive relief against Hewett. Doc. 10 at 21 (Count XVI). Brazill, however, does not claim that Hewett violated

any constitutional right. Brazill's sole allegation against Hewett states: "At Wakulla C.I. Annex, Brazill's current facility, Warden Gary Hewett permits subordinates to disregard official FDOC policies." Doc. 10 ¶ 44. Hewett asserts that this conclusory allegation fails to state a plausible claim for relief. Doc. 57 at 21.

To prevent dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," that is, "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. The mere possibility that the defendant acted unlawfully is insufficient. *Iqbal*, 556 U.S. at 678.

Brazill's conclusory allegation against Hewett does not permit a reasonable inference that Hewett deprived Brazill of a constitutional

right. For this reason, Brazill has not stated a plausible claim for relief against Hewett under § 1983. His claim against Hewett, therefore, must be dismissed.

## IV.  CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     Defendants' motion for summary judgment, Doc. 57, be **GRANTED**.

2.     The District Court **ENTER SUMMARY JUDGMENT** in favor of Defendants Brannon, Jones, Hancock, Bush, Crutchfield, Peterson, Shuler, Floyd, Gordon and Dixon.

3.     The District Court **DISMISS WITH PREJUDICE** Brazill's claim against Defendant Hewett for failure to state a claim.

4.     The clerk of court be directed to enter judgment in accordance with the order adopting this Report and Recommendation and in accordance with Plaintiff's voluntary dismissal of Defendants Wood and May.

5.     The clerk be directed to close this case file.

At Pensacola, Florida, this <u>11th</u> day of June, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation.** <ins>**Any different deadline that may appear on the electronic docket is for the court's internal use only.**</ins> **A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any judicially-noticed fact, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of that fact, they must raise this issue in an objection to this report and recommendation.**